ZBS/LMN: 2020R00870

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

1:57 pm, Feb 10 2022
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF A CRIMINAL
COMPLAINT AGAINST WILLIE
SMALL AND ▮▮▮▮▮▮▮▮▮▮

Case No. 22-0461 BPG & 20-0462 BPG

UNDER SEAL

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, John Messick, Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

1. This Affidavit is submitted in support of a Criminal Complaint for Willie SMALL ("SMALL") and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As detailed below, there is probable cause to believe that SMALL and ▮▮▮▮▮ violated 18 U.S.C. § 922 (g)(1), felon in possession of a firearm/ammunition; 21 U.S.C. §§ 841 and 846, possession with intent to distribute controlled substances and conspiracy to distribute controlled substances.

2. I have been an ATF SA since 2016. I am currently assigned to the ATF Baltimore Field Division, Baltimore VI Field Office. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

3. I have been an ATF SA since 2016. I am currently assigned to the ATF Baltimore Field Division, Baltimore VI Field Office. I have attended the United States Department of Homeland Security's Criminal Investigator Training Program and ATF's Special Agent Basic Training, both located in Glynco, Georgia, for a combined period of twenty-six weeks. I have received extensive training, both formal and on-the-job, in the provisions of the Federal Firearms Laws and Federal Narcotics Laws administered under Title 18, Title 21 and Title 26 of the United States Code. As an ATF agent, I have conducted and participated in investigations concerning

violations of federal firearm laws, violations of federal controlled substance laws, and the commission of violent crimes. I have received specialized training regarding, and have personally participated in, various types of investigative activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who have knowledge concerning violations of federal firearms and controlled substance laws; (c) the execution of search warrants; (d) the consensual monitoring and recording of conversations; (e) electronic surveillance through the use of pen registers; (f) the court-authorized interception of both wire and electronic communications (i.e., Title III wiretaps); and (g) the handling, maintenance, and examination of evidence to include wireless telephones and computers.

4. I have participated in numerous investigations targeting violent Drug Trafficking Organizations (DTOs) operating throughout Baltimore City. I have conducted covert surveillance of suspected narcotics traffickers and violent offenders. I have interviewed defendants who have been charged for violations under Title 18 and Title 21. Through my knowledge, training, and experience, I have become familiar with the manner in which illegal firearms/narcotics are transported, stored, and distributed, and the manner in which firearms/narcotics traffickers and possessors communicate with one another. I have authored approximately fourteen federal search warrants on residences, recovered approximately fourteen illegal firearms from those residences, and arrested approximately ten federal defendants (who violated Title 18 and/or Title 21 of the United States Code). In addition, I have been involved in numerous arrests and interviews of narcotics and firearms traffickers. That includes debriefs of defendants and others who have had experience in using, packaging, processing, and selling/distributing controlled dangerous substances. Based on these conversations and interviews, I have been able to understand language

used by members and ways in which drug trafficking organizations operate within Baltimore, Maryland, and the surrounding areas. I have participated in one Title III wiretap investigation, which targeted an armed DTO operating in East Baltimore. Through this wiretap investigation, I overheard live conversations involving the distribution of narcotics. I am also familiar with the appearances of controlled substances based on prior cases that I worked on in which controlled substances were recovered.

5. From my training, knowledge, experience, and conversations with other agents and officers, I am familiar with the manner in which illegal narcotics are transported, stored, and distributed, and with the methods of payment for such. Based upon that training and experience, I have learned the following:

Based upon that training and experience, I have learned the following:

a. Firearm possessors/narcotics traffickers keep and maintain records of their various activities. Such records are regularly concealed in a suspect's automobile, residence, office, and on his person, and that they take various forms. Documents commonly concealed by traffickers, include but are not limited to notes in code, deposit slips, wired money transactions, hidden bank accounts, photographs of co-conspirators, various forms of commercial paper, personal address books, notebooks, records, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets) both commercial and private, money orders and other papers relating to the ordering, transportation, sale and distribution of firearms or other such documents which will contain identifying data on the co-conspirators. These items are kept in locations that are considered safe by the drug traffickers such as safety deposit boxes, residences, vehicles and on their person, where they have ready access to them. Firearm possessors/narcotics traffickers often have several residences decreasing the likelihood of detection by law enforcement;

b. Firearm possessors/narcotics traffickers may use computers or other electronic storage media, including smart phones, to store the records of documents listed in paragraph a;

c. Narcotics traffickers maintain on hand large amounts of cash to maintain and finance their drug business, which is typically concealed in their residences or vehicles along with financial instruments and evidence of financial transactions relating to drug trafficking activities;

d. Firearm possessors/narcotics traffickers use cellular telephones, pagers and other

electronic communications devices to facilitate their activities. The electronically stored information on these devices is of evidentiary value in identifying other members of related drug or firearm-related conspiracies and establishing the relationship between these individuals, including photographs and other identifying information stored on these devices; and

e. narcotics traffickers commonly possess firearms and other weapons to protect and secure their firearms and money from loss to law enforcement agents or other members of the criminal element that are motivated by greed.

6. As a result of my training, experience and participation in this and other investigations, I know that members of drug trafficking organizations (DTOs) and/or gangs frequently use cellular telephones, social media accounts, communication devices, and other electronic media storage to further their illegal activities.

7. I have set forth only the facts I believe are necessary to establish probable cause for the issuance of a criminal complaint. The information contained in this Affidavit is based upon my review of reports and documents, physical surveillances, observations, interviews and investigative activity by myself and other law enforcement officers.

8. Since January of 2020, ATF has been investigating SMALL for possible violations of federal gun control act and controlled substance laws. In connection with the investigation, ATF determined that in 2014, SMALL was convicted of Conspiracy-CDS Distribution-Narcotics in Maryland State Court. On October 20, 2014, SMALL was sentenced to five years confinement. SMALL is therefore prohibited from possessing firearms. ███████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████

9. In connection with the investigation, ATF utilized a confidential informant ("CI-1") and purchased cocaine base (crack), mixtures of tramadol, heroin, and fentanyl, two firearms, forty-two rounds of .22 caliber ammunition, and one spent round of .22 caliber ammunition from

SMALL. CI-1 has been a paid informant with ATF since June of 2015. CI-1's information and involvement in controlled purchases has led to approximately 22 arrests and four search and seizure warrants in federal court for drug offenses. Ten of the 22 defendants have pleaded guilty to drug conspiracy charges. The remaining defendants have been charged with drug conspiracies and are awaiting trial. I have also corroborated much of the information provided by CI-1. Therefore, I believe CI-1 is a reliable informant.

10. On January 2, 2020, at approximately 11:00 am, SA Theisen and I met with CI-1. I provided CI-1 with $80.00 of ATF agent cashier funds along with audio/video and GPS recording devices. I advised CI-1 to purchase $80.00 worth of cocaine base (crack) from SMALL.

11. At approximately 11:27 am, CI-1 approached SMALL who was standing on or near the 3700 block of Oakmont Avenue in Baltimore, MD. CI-1 asked SMALL for "8 dimes" of cocaine base (crack). I know the term "dimes" is referring to packaged narcotics costing $10.00 each. SMALL entered a gray Infiniti Sedan bearing Maryland tag number 4EC9825. Seconds later, SMALL exited the Infiniti Sedan and handed CI-1 eight plastic jugs containing cocaine base (crack). CI-1 handed SMALL $80.00 of the ATF agent cashier funds. This controlled purchase was audio/video recorded.

12. The eight containers of cocaine base (crack) were submitted to the Baltimore Police Department (BPD) Evidence Control Unit (ECU) for further analysis. I have reviewed an analysis report for the purchased narcotics and determined that the results were positive for the presence cocaine base (crack).

13. On September 20, 2021, SA Theisen and I met with CI-1. I provided CI-1 with $350.00 of ATF agent cashier funds along with audio/video and GPS recording devices. I advised CI-1 to approach SMALL and purchase 7 grams of cocaine base (crack) from SMALL.

14. At approximately 11:51 am, CI-1 approached SMALL who was standing on the 4400 block of Park Heights Avenue in Baltimore, MD. SMALL told CI-1 that he could sell 3.5 grams of cocaine base (crack). CI-1 and SMALL entered a Liquor Store located on the 4400 block of Park Heights Avenue and SMALL handed CI-1 a clear plastic bag containing a white rock like substance of suspected cocaine base (crack). CI-1 handed SMALL $195.00 of ATF agent cashier funds. This transaction was recorded on the audio/video recording devices.

15. The suspected narcotics purchased from SMALL were submitted to BPD ECU for further analysis and the results were positive for the presence of cocaine base (crack).

16. On September 29, 2021, Task Force Officer SA Theisen and I met with CI-1. I provided CI-1 with $350.00 of ATF agent cashier funds along with audio/video and GPS recording devices. I advised CI-1 to purchase 7 grams of cocaine base (crack) from SMALL.

17. At approximately 12:16 pm, CI-1 approached SMALL on the 4400 block of Park Heights Avenue in Baltimore, MD. CI-1 and SMALL entered the Liquor Store located at 4416 Park Heights Avenue and SMALL handed CI-1 two clear plastic bags containing suspected cocaine base (crack). CI-1 handed SMALL $350.00 of the ATF agent cashier funds. This transaction was recorded on the audio/video recording devices.

18. The suspected narcotics purchased from SMALL were submitted to the BPD ECU for further analysis. Results provided positive results for the presence of cocaine base (crack).

19. On November 17, 2021, Task Force Officer (TFO) Hopson and I met with CI-1. I provided CI-1 with $400.00 of ATF agent cashier funds along with audio/video and GPS recording devices. I advised CI-1 to purchase 7 grams of cocaine base (crack) and 1 gram of heroin/fentanyl from SMALL.

20. At approximately 11:05 am, CI-1 approached SMALL on the 4400 block of Park Heights Avenue in Baltimore, MD. CI-1 and SMALL entered the Liquor Store located at 4416 Park Heights Avenue and SMALL handed CI-1 two clear plastic bags containing suspected cocaine base (crack) and six clear gel capsules containing suspected heroin/fentanyl. CI-1 handed SMALL $400.00 of ATF agent cashier funds.

21. The purchased narcotics were submitted to the BPD ECU for further analysis. I have reviewed analysis reports and know results were positive for the presence of cocaine base (crack) and a mixture of 4-Anilino-N-phenethylpiperidine and Fentanyl.

22. On December 2, 2021, SA Theisen and I met with CI-1. I provided CI-1 with $400.00 of ATF agent cashier funds along with audio/video and GPS recording devices. I advised CI-1 to purchase 7 grams of cocaine base (crack) and 1 gram of heroin/fentanyl. I also advised CI-1 to ask SMALL if he had/knew of any firearms for sale.

23. At approximately 4:15 pm, CI-1 approached SMALL on the 4400 block of Park Heights Avenue in Baltimore, MD. SMALL handed CI-1 a clear plastic bag containing suspected cocaine base (crack) and a clear plastic bag containing suspected heroin/fentanyl. CI-1 handed SMALL $400.00 of ATF agent cashier funds. CI-1 asked SMALL if he had any firearms for sale and SMALL told CI-1 that he had a "seven shot 22 for 400.00."

24. At approximately 4:28 pm, SA Theisen gained control of the suspected narcotics purchased from SMALL. I provided CI-1 with $400.00 of ATF agent cashier funds and advised CI-1 to purchase the suspected firearm from SMALL. CI-1 remained in control of the audio/video and GPS recording devices.

25. The suspected narcotics purchased from SMALL were submitted to the BPD ECU for further analysis. Lab reports showed positive results for the presence of cocaine base (crack) and a mixture of tramadol, 4-Anilino-N-phenethylpiperidine, heroin and Fentanyl.

26. Also on December 2, 2021, at approximately 5:39 pm, CI-1 approached SMALL on the 4400 block of Park Heights Avenue. SMALL handed CI-1 a .22 caliber revolver loaded with six live rounds of Federal .22 LR rounds of ammunition and one spent round of Federal .22 LR ammunition. In exchange, CI-1 handed SMALL $400.00 of ATF agent cashier funds. I have consulted with an interstate nexus expert and allowed the expert to look at the revolver purchased from SMALL. Based on the expert's opinion, the purchased revolver meets the definition of a firearm, but there is not a clear identification of where the revolver was manufactured. I know printed on the frame of the revolver is the stamp "PIC Decatur G.A." Based on my conversation with the Interstate Nexus Expert, "PIC" stands for Precise Imports Company and was an importer from Decatur, GA. Therefore, I believe this firearm was not manufactured in the State of Maryland and therefore affected interstate commerce. The nexus expert further believes that the Federal .22 caliber rounds of ammunition do meet the definition of ammunition and were not manufactured in the State of Maryland, therefore affecting interstate commerce.

27. On December 9, 2021, SA Theisen and I met with CI-1. I provided CI-1 with $450.00 of ATF agent cashier funds along with audio/video and GPS recording devices. I instructed CI-1 to purchase approximately 7 grams of cocaine base (crack) and 1 gram of heroin/fentanyl from SMALL.

28. At approximately 12:42 pm, CI-1 approached SMALL on the 4400 block of Park Heights Avenue in Baltimore, Maryland. SMALL handed CI-1 a clear plastic bag containing

suspected cocaine base (crack) and a clear plastic bag containing suspected heroin/fentanyl. CI-1 handed SMALL $450.00 of ATF agent cashier funds.

29. The suspected narcotics purchased from SMALL were submitted to the BPD ECU for further analysis. Lab reports showed positive results for the presence of cocaine base (crack) and a mixture of tramadol, 4-Anilino-N-phenethylpiperidine, heroin and Fentanyl.

30. On December 16, 2021, SA Theisen and I met with CI-1. I provided CI-1 with $450.00 of ATF agent cashier funds along with audio/video and GPS recording devices. I advised CI-1 to purchase approximately 7 grams of cocaine base (crack) and approximately .8 grams of heroin/fentanyl from SMALL.

31. At approximately 3:35 pm, CI-1 approached SMALL on the 4400 block of Park Heights Avenue in Baltimore, Maryland. SMALL handed CI-1 two clear plastic bags containing suspected cocaine base (crack) and a clear plastic bag containing suspected heroin/fentanyl. CI-1 handed SMALL $430.00 of ATF agent cashier funds.

32. The suspected narcotics purchased from SMALL were submitted to the BPD ECU for further analysis. Results are still pending.

33. On January 13, 2022, SA Theisen and I met with CI-1. I provided CI-1 with $1,450.00 of ATF agent cashier funds along with audio/video and GPS recording devices. I advised CI-1 to purchase approximately 14 grams of cocaine base (crack) from SMALL and to inquire for another firearm.

34. At approximately 1:48 pm, CI-1 approached SMALL sitting in a GMC Sierra bearing Maryland tag number T0670796. SMALL exited said truck and approached CI-1 on the 4400 block of Park Heights Avenue in Baltimore, Maryland. SMALL handed CI-1 a clear plastic bag containing suspected cocaine base (crack). CI-1 handed SMALL $650.00 of ATF agent cashier

9

funds. CI-1 also asked SMALL for a $100.00 worth of "dope." I know "dope" is a street term used to refer to heroin. SMALL entered the GMC Sierra and retrieved a clear plastic bag containing suspected heroin/fentanyl. CI-1 handed SMALL $100.00 of ATF agent cashier funds.

35. CI-1 inquired about another firearm for sale. SMALL told CI-1 that he had a "38 Special/357." SMALL told CI-1 he would sell this firearm for $550.00. CI-1 told SMALL he/she would buy said firearm and currently had the money to make the purchase. SMALL told CI-1, "I'm just gonna get it from him." I believe another male or "him" was in possession of the 38 Special and SMALL was going to get the firearm.

36. At approximately 3:17 pm, I contacted CI-1 and advised CI-1 to meet me and ATF SA Theisen. At that point, I did not believe SMALL was going to be able to sell CI-1 the suspected firearm.

37. On January 18, 2022, I received information from CI-1 that SMALL knew of another firearm for sale. SMALL told CI-1 that the firearm was in a "box" and the individual selling the firearm would drive to the 4400 block of Park Heights Avenue in Baltimore, MD. I advised CI-1 to organize a meet to purchase the suspected firearm on January 19, 2022.

38. On January 19, 2022, SA Theisen and I met with CI-1. I provided CI-1 with $750.00 of ATF agent cashier funds along with audio/video and GPS recording devices. I advised CI-1 to purchase the suspected firearm for $550.00 and 3.5 grams of cocaine base (crack).

39. At approximately 1:28 pm, TFO DiPaola utilized CCTV camera 840 and observed ▮▮▮▮ wearing a yellow jacket, red book bag, and sunglasses entering a black Acura TL bearing Maryland tag number A364567 from the back driver's side door. I know the black Acura TL was parked on the 4400 block of Park Heights Avenue in Baltimore, MD.

40. At approximately 1:29 pm, SMALL exited the same black Acura TL from the front driver's side door. SMALL was wearing a blue denim jacket, green camouflage pants and the same red book bag that was previously worn by ▇▇▇▇. Seconds later, CI-1 approached SMALL on the 4400 block of Park Heights Avenue in Baltimore, Maryland and both entered the Liquor Store located at 4416 Park Heights Avenue. SMALL led CI-1 to the back of the store and opened the red book bag. SMALL retrieved a blue Smith & Wesson gun box that contained a firearm, specifically a Smith & Wesson Model: 617 with serial number CDH1077. SMALL also retrieved a clear CCI ammunition box containing thirty-six rounds of CCI .22 caliber ammunition. CI-1 handed SMALL $550.00 of the ATF agent cashier funds and SMALL handed CI-1 the blue Smith & Wesson firearm box along with the CCI ammunition box containing the thirty-six rounds of CCI .22 caliber ammunition.

41. SMALL was in possession of approximately 7 grams of cocaine base (crack). SMALL appeared to realize CI-1 did not have enough money to purchase the 7 grams, so SMALL walked back to the Acura TL. CI-1 waited by the front doorway of the liquor store located at 4416 Park Heights Avenue.

42. At approximately 1:35 pm, ▇▇▇▇ exited the Acura TL holding onto the same red book bag that concealed the Smith & Wesson Model: 617 .22 caliber revolver and CCI .22 caliber ammunition. ▇▇▇▇ entered the liquor store and walked past CI-1. CI-1 opened the front door of the liquor store and SMALL told CI-1, "Tell him to give it to you right there." At this time, CI-1 turned around and ▇▇▇▇ was standing in front of CI-1. ▇▇▇▇ handed CI-1 a clear plastic bag containing suspected cocaine base (crack). After the transaction, ▇▇▇▇ walked towards the back of the liquor store and exited said store through a back door. TFO DiPaola utilized

CCTV camera 807 and observed ▇▇▇▇ place the red book bag into a white Subaru Forester bearing Maryland tag number 5EN1002.

43. The suspected cocaine base (crack) purchased from BROOKS was submitted to the BPD ECU for further analysis and the laboratory confirmed the presence of cocaine base.

44. I have consulted with an interstate nexus expert and determined that the Smith & Wesson Model: 617 with serial number CDH1077 and the thirty-six rounds of CCI .22 caliber ammunition were not manufactured in the state of Maryland, therefore affecting interstate commerce.

45. Based on the information provided above, I believe ▇▇▇▇ possessed the Smith & Wesson .22 caliber revolver and concealed said firearm inside the red book bag. I believe ▇▇▇▇ is the same person that SMALL was talking about on January 18, 2022, who possessed a firearm inside a "box." Based on an inquiry into said firearm, I believe the blue Smith & Wesson gun box is the original gun box that the Smith & Wesson revolver was purchased in. I believe this because the blue Smith & Wesson box purchased by ATF has a label with the same make, model, and serial number of the .22 caliber revolver. I believe SMALL agreed to sell the revolver for ▇▇▇▇, because ▇▇▇▇ did not know CI-1. I also believe ▇▇▇▇ agreed to provide CI-1 with the suspected cocaine base (crack) because SMALL was the only person who knew CI-1 was wanting to purchase cocaine base (crack).

46. On February 1, 2022, the Honorable J. Mark Coulson, United States Magistrate Judge for the District of Maryland authorized a warrant to search several locations including 9705 Mill Centre Drive Apartment 513 in Owings Mills, MD where ATF believes that SMALL resides and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

47. WHEREFORE, I respectfully request that the Court authorize the attached Criminal Complaint.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*John Messick*
Special Agent John Messick
Bureau of Alcohol, Tobacco, Firearms and Explosives

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this ___8th___ day of February, 2022.

Hon. Beth P. Gesner
United States Magistrate Judge